# STATE OF VERMONT

# ENVIRONMENTAL COURT

In re: Appeal of Sno-Cross        }
Appeal Group                      }
                                  }  Docket No. 206-9-00 Vtec
                                  }
                                  }

## Decision and Order

Appellant group appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Wilmington, granting a conditional use permit to Appellee-Applicants High Country Snowmobile Tours and Mount Snow, Ltd. for a so-called ' snow-cross' operation at the Lower Haystack portion of the Haystack Ski Area. Appellee-Applicants did not appeal the denial of their application to use the area in the summer season for motorcycle " moto-cross," therefore that denial and the proposed summer operations will not be further discussed.

Appellants are represented by Seth B. Bongartz; Appellee-Applicants are represented by Thomas J. Montemagni, Esq. The Town of Wilmington, represented by Richard M. Gale, Esq., had entered an appearance but did not take an active role and did not participate in the trial. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also had taken a site visit with the parties. The parties were given a schedule to provide the Court with requests for findings or permit conditions they wished the Court to impose in the event a permit was granted, but did not do so until prompted by the Court. Upon consideration of the evidence, the site visit, and the parties' filings, the Court finds and concludes as follows.

The Haystack Ski Area, located in the Town of Wilmington, is owned and operated by Mount Snow, Ltd. (" Mt. Snow" ). The area of the Haystack Ski Area known as ' Lower Haystack' is located to the east of and at a lower elevation than the main portion of the Haystack Ski Area. Lower Haystack has a separate base lodge, chairlift, T-bar lift, snowmaking capability, and five ski trails. It is located in the Commercial zoning district.

Mark and Wendy Pederson own and operate High Country Snowmobile Tours (" High Country" ). High Country and Mt. Snow applied for and received from the ZBA a conditional use permit to operate a " snow-cross" operation at Lower Haystack, which is on appeal in the present case. The parties agree that the only conditional use criterion at issue in the present appeal is whether the proposed activity will or will not " adversely affect the character of the area."

Snow-cross as an activity is different from the more traditional snowmobiling activity of traveling a distance along a trail through fields and forests. Rather, snow-cross is similar to the motorcycle activity known as moto-cross, in which the riders compete with each other, or against the clock, as they ride around a prepared track, loop or trail with turns, straight sections, uphill and downhill stretches, and jumps.

Appellee-Applicants propose to construct three snow-cross courses or loops on Lower Haystack, as shown in Exhibit 3. They have changed the layout of the courses so that they do not approach as close to the nearby homes as in the proposal before the ZBA.

Appellee-Applicants now propose a relatively small ' youth' track at the top of Lower Haystack, on relatively level ground, on which children (ages 6 to 12) will ride their snowmobiles. They propose to allow up to six snowmobiles at a time to operate on the ' youth' track.

Appellee-Applicants now propose an ' expert' and a ' pro' course for snowmobile riders over the age of 12, each to operate on one of the two existing ski trails on Lower Haystack. During snow-cross operation, Lower Haystack is proposed to be used exclusively for snow-cross and will be closed to skiing, so that the ski lifts would not be operating during snow-cross operation. The ' expert' and ' pro' courses are proposed to be constructed with uphill sections, downhill sections, jumps, banked turns and straightaways, in order to produce a varied experience for the rider. Individual snowmobilers may race each other around the course. Appellee-Applicants propose to allow up to twelve snowmobiles at a time to operate on each of the ' expert' and the ' pro' courses, so that up to 24 snowmobiles may be operating simultaneously on those courses, although they expect an average of 6 to 8 at a time on each of these courses.

Appellee-Applicants propose to rent snowmobiles to riders for use on the snow-cross courses, as well as to allow riders to bring their own snowmobiles to use on the snow-cross courses. The snowmobiles available for rent will be adapted for snow-cross use, with superior shock absorbers and heavy-duty springs. They propose to require each snowmobile used on the snow-cross courses to meet a 82 decibel noise level federal manufacturing limit, which they propose to enforce by examining the machines to see if the exhaust system has been modified.

Appellee-Applicants propose to use the lower base lodge and its parking lots, which can accommodate 900 vehicles. They propose to reopen food and beverage areas, restrooms and retail space in the base lodge, and to use it for office space, storage, and a first aid station. They estimate that they will have twelve to twenty employees. They propose that two fully-certified emergency medical technicians will be on the premises at all times that the snow-cross courses are in operation.

Appellee-Applicants propose to operate, weather permitting, from November 1 through April 15 of each year, seven days a week within that period. They anticipate far heavier usage of the courses on weekends and during the traditional holiday weeks of Thanksgiving week, the two weeks including Christmas and New Year' s Day, the week in January containing the Martin Luther King federal holiday, and the week in February containing the Presidents' Day federal

holiday. They propose to operate from 8:00 a.m. to 4:00 p.m. on weekends and during holiday weeks, and from 9:00 a.m. to 4:00 p.m. on non-holiday weekdays.

Appellee-Applicants and Appellants agree that there will be no loudspeakers on the premises in connection with the proposed snow-cross operation, and that there will be a fuel tank at the Upper Base Lodge. Appellee-Applicants propose that the fuel tank be a 2000-gallon above-ground 'fireguard' tank.

Several groups of homes are located less than a thousand feet from the proposed snowmobile tracks associated with the proposed snow-cross operation. The Powderhorn development of 26 units is located in the Commercial zoning district, approximately 800 feet from a proposed snowmobile track. The Fanny Hill Drive development of 32 units is located in the Commercial zoning district, approximately 400 feet from a proposed snowmobile track. The Village East and Village East Circle development of 32 units is located in a residential zoning district 600 feet across a small valley and across Coldbrook Road from the proposed snowmobile courses. Coldbrook Road is a two-lane road with a speed limit of 40 miles per hour. These developments were originally constructed as second homes for people interested in skiing at Haystack. Most of these homes continue to be used as second homes, primarily in the winter months; some of them have become year-round primary residences.

The character of the area necessarily includes an operating ski area, including its related commercial operations, and the roadways within the area and Coldbrook Road, as well as the quieter townhome and single-family residences. The noise characteristic of the area includes the noise of the ski lift machinery, the noise of snowmaking, the noise of snowmobiles necessary to service the snowmaking system, the noise of trail grooming machinery, and the noise of people talking, laughing and shouting on the ski slopes, as well as the vehicle noises in the parking lot and roadway noise on Coldbrook Road. In the winter, the ski area operations are much busier and therefore noisier on weekends, so that the area is ordinarily more peaceful and less noisy on weekdays. When operated as a ski area, snowmaking on Lower Haystack would ordinarily occur round the clock for 7 to 10 days at the beginning of the season (or if the base melted during the season due to rain) to achieve an adequate base, and then two to three times a week, usually at night, to refresh the snow as necessary. The technicians operating the snowmaking machinery go to the nozzle locations by snowmobile as necessary to service the machinery.

However, snowmobiles proceeding around a course as described for this proposal, emit sound in a frequency range and of a type that is characteristically annoying to the human ear. It is a buzzing whine that increases and decreases depending on factors such as the topography over which the machines are traveling, the distance to the listener, whether there is an intervening hillside or belt of trees between the machines and the listener, and the equipment of the machines. Both as measured by Appellants' expert and as perceived outdoors at the site visit, the two or three snowmobiles in the sound testing increased in noise during some segments of the course, and were most noticeable and annoying at the Village East location across Coldbrook Road, due to the open valley across which the noise was perceived as opposed to the other locations protected by the topography and wooded areas from direct exposure to the noise. The snow-cross operation when operating at peak capacity could have 10 to 12 times as many machines operating at a time and therefore a substantial increase in the level of this annoying

noise compared to the levels measured during the noise testing. The noise of two snowmobiles is capable of being heard indoors but is not substantially annoying, but the noise of the courses when fully operating could potentially produce noise that would be annoying when perceived from indoors at some of Appellants' residences.

Given the character of the area around an operating ski area and the characteristics of the snow-cross operation, we conclude that the proposal can be prevented from adversely affecting the character of the area only by restricting the periods of operation and imposing other conditions to give the residents some respite during the season from exposure to the annoying noise.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' application to construct and operate a ' snow-cross' operation at Lower Haystack on the courses as shown in Exhibit 3 is GRANTED, subject to the following conditions. Any future modifications of the proposed operation require an application for amendment to be made to the ZBA, as well as any other required state and municipal permits. Within 5 days of receipt of this order, Appellee-Applicants shall file with the ZBA a copy of this order and a final copy of the course layout as shown on Exhibit 3, for the Town' s zoning permit file for this project.

1. Appellee-Applicants may operate the snow-cross operation from November 1 through April 15 each year, on the courses as shown in Exhibit 3. No clearing of trees or vegetation on the perimeter of the courses may occur without further amendment of this permit.

2. Within the operating season, Appellee-Applicants may operate the snow-cross operation on all Saturdays and Sundays and on two designated weekdays, for a total of 4 days a week, except that for six designated weeks in the season Appellee-Applicants may operate 7 days a week. Any changes to the designated weeks of operation made necessary by weather conditions may be made during the season by Appellee-Applicants, provided that actual notice is made to the members of the Appellant group in advance of the changed week or weeks of operation. Any member of Appellant group entitled to receive such actual notice shall provide to Appellee-Applicants' attorney the means (U.S. Mail (first class) or email) and address of such notice, and shall keep such address current, or will be deemed to have waived the right to receive such notice. On any day on which the snow-cross operation is not operating, Appellee-Applicants may open Lower Haystack for skiing and may operate the base lodge and ski lifts in connection with such skiing.

3. Within any operating day, Appellee-Applicants may operate the snow-cross courses from 9 a.m. to 4 p.m., and may operate the base lodge until 5 p.m. The hours of operations do not limit any trail grooming or snowmaking ordinarily done outside of operating hours as for a ski area.

4. Appellee-Applicants shall prohibit motorcycles, off-road vehicles or other motorized machines from using the courses at any time of year. Use of the courses for non-motorized recreation, such as mountain biking or mountain running, in the off-season, is not addressed by this permit but must be the subject of a separate application to the ZBA. Snowmobiles allowed on the courses must be equipped with mufflers and/or other noise-control equipment capable of meeting the 84 dB noise standard or quieter.

5. Appellee-Applicants shall maintain at least two fully-certified emergency medical technicians on-site during all hours of operation of the snow-cross operation.

In addition, Appellee-Applicants did not propose, oppose or object to the imposition of the following conditions imposed by the ZBA, but neither did the Appellant group request them or provide evidence supporting the imposition of the following conditions imposed by the ZBA. Accordingly, the following conditions are imposed only because they were contained in the ZBA decision and not addressed on appeal. Any motions to amend to eliminate or change any these conditions shall be filed promptly and within the 10 days provided by V.R.C.P. 52(b).

A. Appellee-Applicants shall run the ' pro' course (nearest to Powderhorn) in a counterclockwise direction.
B. Appellee-Applicants shall not hold any professional or " sanctioned" snowmobile races on the proposed courses, although individual snowmobilers may be allowed to race each other around the course.

C. Appellee-Applicants shall install signage at their expense at the lower end of Fannie Hill Road to indicate that it is a private road.

D. Appellee-Applicants shall not allow any overnight camping on the property or in the parking lots; no recreational vehicles shall be allowed to stay overnight on the property, including in the parking lots.

Dated at Barre, Vermont, this 30th day of January, 2002.

_____

Merideth Wright
Environmental Judge

**Footnotes**

[1] The "area" in this analysis is not restricted to the Commercial zoning district, but rather includes the area affected by the proposal, regardless of zoning district.

[2] The Court expects from the testimony of Appellee-Applicants' witnesses at trial that Appellee-Applicants will designate these additional days as Fridays and Mondays or as Thursdays and Fridays, to extend the weekend, but leaves that designation to Appellee-Applicants, to be announced prior to the beginning of each annual season.

[3] The Court expects that from the testimony of Appellee-Applicants' witnesses at trial that Appellee-Applicants will designate these weeks as Thanksgiving week, two weeks at the period including Christmas and New Year's Day, the week in January containing the Martin Luther King federal holiday, and the week in February containing the Presidents' Day federal holiday, and one additional week (possible Easter week if it occurs early enough in the season, or a week advertised for a snow-cross tournament), but the Court leaves that designation to Appellee-Applicants, to be announced prior to the beginning of each annual season.

[4] This term, found in the ZBA decision, must refer to a snow-cross organization or association, but no evidence was presented of such organization.